GEORGE C. LORANGER v. MARTIN FOLEY.

*Sale—Books of account—Evidence.*

A charge upon a vendor's books is not *conclusive* as to whom the
sale was made and credit given, but may be explained and
shown to be a mistake, and that the sale was really made and
credit given to a third party.

Error to Houghton.   (Williams, J.)   Submitted on
briefs January 10, 1890.   Decided January 24, 1890.

*Assumpsit.*  Defendant brings error.  Affirmed.  The
facts are stated in the opinion.

*T. M. Brady* (*Cahill & Ostrander,* of counsel), for
appellant.

*A. T. Streeter,* for plaintiff.

CHAMPLIN, C. J.  Foley entered into a contract with
Oleson & Wold to erect a store building upon his lot in
the village of Red Jacket, Houghton county, according
to certain plans and specifications, and to furnish all the
material therefor, for the sum of $1,500.  After the con-
tract had been partly performed, Foley wanted some
extra work done, which would require common lumber,
dressed on one side, and sawed into strips one and one-
half inches wide.   The plaintiff introduced testimony
tending to prove that Foley, and Wold, of the firm of
Oleson & Wold, went to the place of business of Persons
& Loranger, who were the owners of a saw-mill, and
dealers in lumber, and that Wold told Persons that Foley
wanted some strips made from common lumber dressed
on one side, and ripped into strips one and one-half
inches wide, and that Foley's team would come after it.

when it was ready; and without making further inquiry Persons & Loranger furnished the strips, and charged them on their books to Oleson & Wold. Some time after that Foley went to Persons & Loranger's place of business, and ordered 1,000 feet more of the strips, saying that he did not have enough, and telling them to charge them to Oleson & Wold, which was done. Foley's team drew away the strips, and they were used in his building which Oleson & Wold were building for him.

Persons & Loranger made out their account, and presented it to Oleson & Wold for payment, and they refused, alleging as their reason that the strips were not a part of their contract with Foley, and, further, that when ordered by Mr. Wold, and in Foley's presence, he said that the strips were for Mr. Foley. They then went to Foley and explained the matter to him, and that Oleson & Wold utterly and positively refused to pay for those strips. That Foley told Mr. Persons that if they could not get their pay from Oleson & Wold he would pay them, or that he would see them paid. Oleson & Wold still refusing to pay, Persons again went to Foley, and asked him if Oleson & Wold still refused to pay, if he gave them credit on their account for those strips, and charged them to him, he would pay it, and he said he would, and told him again if they refused to pay that bill he would pay. That he went immediately to Oleson & Wold, and they still refused, and, in pursuance of the promise of Foley, he gave them credit on their account for the amount charged for the strips, and charged the same to Foley. Afterwards Persons & Loranger presented their account to Foley, including the strips, and he paid part of the account, but refused to pay for the strips; giving as his excuse that he had not then had a settlement with Oleson & Wold, but when he had he would so arrange the settlement as to pay Persons & Loranger.

Persons afterwards sold and assigned his claim to Loranger, who brought suit against Foley to recover payment for the strips.

Foley testified in his own behalf to the effect that Oleson & Wold were to furnish all of the material for the extra work, and said they could get it of Persons; that he went with Wold, and Wold ordered the strips; that they needed more strips, and he went over to Persons, and told him:

" We wanted a thousand more of these strips, and I told him to charge them. Says he: 'We have no account with you.' Said I: 'I didn't say you had; this is all furnished by Oleson & Wold. They are furnishing everything for the building.'"

He further testified that he told Persons that if he could not collect the bill of Oleson & Wold by law he would pay the bill. He denied the conversation testified to by Persons about crediting Oleson & Wold, and charging to him. Afterwards, as he testifies, he settled with Oleson, and received a receipt signed by Oleson individually, as follows:

"$200.                    RED JACKET, April 27, 1887.

" Received from Martin Foley two hundred dollars, in full settlement for contract, extra labor, and material used in building upon south half of lot one, block A, village of Red Jacket.

"SIVERT OLESON."

The circuit judge charged the jury as follows:

" Gentlemen, there isn't much to this case. It is a question as to what the facts are, and that is all. The plaintiff, Loranger, claims that there was certain goods, in the shape of lumber, sold to go into the house being built by the defendant, Martin Foley, and it is conceded that the lumber did go into the house of Martin Foley. The question is, who ought to pay for the lumber? And, to determine that question, the first matter you have got to determine is, who, as a matter of fact, bought that lumber? Now, it appears that the plaintiff, Loranger,

and his partner, charged the lumber to Oleson & Wold. That, of itself, on the face of it, would make it look as though they intended to sell the lumber to Oleson & Wold. Presumptively, that is so. They can explain that, and show it was a mistake, if they see fit; and if you find, as a matter of fact, that the lumber was sold to Martin Foley, and it was Martin Foley's lumber, and he became the debtor, and not Oleson & Wold, and this charge is a mistake, then you should find Foley is responsible for the price of the lumber. If you find for the plaintiff against Foley, then you will add interest at seven per cent. from the time it ought to have been paid to the present time.

"The principal question in the case is, who became the debtor,—whose goods were they; whether they were bought by Oleson, or whether they were bought by Foley? Foley could buy the goods through somebody else if he wanted to, and Oleson could buy the goods through somebody else if he wanted to; but the question is, as a matter of fact, who did buy those goods? If you determine it was Foley who bought the goods, then he is liable. If you determine Oleson bought the goods, considering all the evidence in the case—Now, if you find, as a matter of fact, that Oleson was the man who bought the goods, then, was there afterwards an agreement between Foley and Oleson and Loranger by which Oleson was released, and Foley assumed it? You understand there must be a consideration for this. Oleson would have to release Foley from so much of his indebtedness to him. It is really changing about. If you find anything of that kind,—if you find that Foley was released by Oleson for the amount of those goods, and assumed this other account,—then the statute of frauds would not apply, notwithstanding it was not in writing. If there was nothing of that kind,—if you find that Oleson bought the goods,—then Foley would not be liable."

The jury retired to consider their verdict, and the court ordered them to return to the court-room, and charged them as follows:

"The only question, then, before you, is, who was the purchaser of those goods? When you settle that, that settles the case. If you find Foley was not the purchaser,

then he is not liable; if he was, then he is liable. That is all there is to it.

"*Mr. Brady.* You used the term 'purchaser,'—that may be misconstrued.

"*The Court.* Well, I mean the debtor,—who was the original debtor?"

Error is assigned upon the charge of the court, as follows:

"1. The trial court erred in not instructing the jury that, under the pleadings and proofs in this case, the plaintiff could not recover.

"2. That the trial judge erred in submitting to the jury the question of who was the original debtor in the case, the plaintiff's own testimony showing the goods were ordered by and delivered and charged to Oleson & Wold.

"3. That the trial judge erred in charging the jury, in effect, that if they found Oleson & Wold originally bought the goods, and that there was afterwards an arrangement made between Foley and Oleson & Wold and Loranger, by which Oleson & Wold were released and Foley assumed the debt, under such circumstances Foley would be liable; and in what the judge said to the jury on their return."

The first assignment of error is overruled.

The second assignment is not tenable. The charge upon the books to Oleson & Wold was not conclusive, and the court charged correctly upon that point.

The third error assigned was corrected by the charge of the court when he recalled the jury.

We perceive no error in the record, and the judgment is affirmed.

The other Justices concurred.